[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-11648

_____

D.C. Docket No. 0:13-cv-60768-JIC


ADAM KARHU,

Plaintiff - Appellant,

versus

VITAL PHARMACEUTICALS, INC.,
d.b.a. VPX Sports,

Defendant - Appellee.


_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 9, 2015)

Before MARTIN and FAY, Circuit Judges, and GOLDBERG,[*] Judge.

---

[*] The Honorable Richard W. Goldberg, United States Court of International Trade Judge, sitting by designation.

GOLDBERG, Judge:

Vital Pharmaceuticals, Inc. ("VPX") markets a dietary supplement called VPX Meltdown Fat Incinerator ("Meltdown"), which it advertises for fat loss. Adam Karhu purchased the supplement in reliance on Meltdown's advertising. Karhu brought class-action suit, alleging that Meltdown's advertising is false, insofar as Meltdown does not aid fat loss.

Karhu moved to certify class of nationwide Meltdown purchasers as well as a subclass of New York purchasers. Certification is governed by Federal Rule of Civil Procedure 23. Under Rule 23, certification is proper where the proposed classes satisfy an implicit ascertainability requirement, the four requirements listed in Rule 23(a), and the requirements listed in any of Rule 23(b)(1), (2), or (3). Little v. T-Mobile USA, Inc., 691 F.3d 1302, 1304 (11th Cir. 2012). The district court denied Karhu's motion, holding that the proposed classes satisfied neither Rule 23's implicit ascertainability requirement, nor the requirements listed in either Rule 23(b)(2) or (3).[1] Karhu moved to alter or amend the order denying class certification, which the district court also denied.

Karhu appeals. He claims that the district court erred to hold that (1) neither proposed class satisfied the ascertainability requirement, and (2) the New York subclass failed to satisfy Rule 23(b)(3)'s requirements. We hold that the district

---

[1] Karhu had not argued for certification pursuant to Rule 23(b)(1).

2

court's ascertainability decision was proper.  We therefore affirm without reaching the district court's Rule 23(b)(3) decision.

## I. BACKGROUND

A. Legal Framework for the Ascertainability Requirement

"The burden of establishing the[ requirements of certification under Rule 23] is on the plaintiff who seeks to certify the suit as a class action."  Heaven v. Trust Co. Bank, 118 F.3d 735, 737 (11th Cir. 1997).  Rule 23 implicitly requires that the "proposed class is adequately defined and clearly ascertainable."  Little, 691 F.3d at 1304 (internal quotation marks omitted).

In the past, this court has stated that a class is not ascertainable unless the class definition contains objective criteria that allow for class members to be identified in an administratively feasible way.  Bussey v. Macon Cnty. Greyhound Park, Inc., 562 F. App'x. 782, 787 (11th Cir. 2014).  Identifying class members is administratively feasible when it is a "manageable process that does not require much, if any, individual inquiry."  Id. (internal quotation marks omitted).

B. The District Court's Order Denying Karhu's Motion for Class Certification

Invoking these rules, the district court denied Karhu's motion for class certification, holding that Karhu had failed to establish that his proposed classes were ascertainable.  Although Karhu's class definitions contained objective criteria, Karhu "ha[d] failed to propose a realistic method of identifying the

individuals who purchased Meltdown." Karhu had proposed that the court use VPX's "sales data," but VPX sold primarily to "distributors and retailers," such that VPX's records could not be used to determine "the identities of most [class] members."

The court also considered, apparently of its own accord, whether allowing class members to come forward and identify themselves through sales receipts or affidavits would render the classes ascertainable. The court rejected the receipts-based method on grounds that Meltdown's low cost meant most class members would not retain their proof of purchase.

The district court also rejected the affidavit-based method. The court had several concerns. If, on the one hand, "affidavits of Meltdown purchases [were accepted] without verification," VPX would be deprived "of its due process rights to challenge the claims of each putative class member." "On the other hand, allowing VPX to contest each affidavit would require a series of mini-trials" to determine class membership, which would not be administratively feasible. Moreover, "[u]sing affidavits to determine class membership would also invite fraudulent submissions and could dilute the recovery of genuine class members."

C. Karhu's Motion to Alter or Amend the Order Denying Class Certification, and the District Court's Order Denying Karhu's Motion

Karhu moved to alter or amend the order denying certification pursuant to Rule 23(c)(1)(C). Karhu argued, *inter alia*, that new evidence showed that VPX

sold Meltdown primarily to third-party retailers, such that class members could be identified by subpoenaing records from retailers.  According to Karhu, proposing that class members could be identified using the records of third-party retailers was sufficient to satisfy the ascertainability requirement.

The district court denied Karhu's motion for reconsideration.  The court reasoned that Karhu's subpoena-based method was not predicated on new evidence at all:  Karhu had come up with the method by examining VPX's sales data, which had been available to Karhu well before he moved for class certification.  Therefore, the district court would not accept such a description as grounds for reconsideration.

## II. DISCUSSION

Karhu appeals, claiming, *inter alia*, that the district court abused its discretion in the order denying class certification by holding that Karhu had failed to establish that his proposed classes were ascertainable.[2]  We affirm the district court's ascertainability decision.

As noted, the plaintiff seeking certification bears the burden of establishing the requirements of Rule 23, including ascertainability.  Heaven, 118 F.3d at 737. In order to establish ascertainability, the plaintiff must propose an administratively

---

[2] A district court's denial of class certification is reviewed for an abuse of discretion. Little, 691 F.3d at 1305.  Under the abuse of discretion standard, factual determinations are reviewed for clear error, and legal determinations are reviewed *de novo*.  Vega v. T-Mobile, 564 F.3d 1256, 1264–65 (11th Cir. 2009).

feasible method by which class members can be identified.  See Stalley v. ADS Alliance Data Syst., Inc., 296 F.R.D. 670, 679–80 (M.D. Fla. 2013) (denying certification because "the Court ha[d] not been presented with reasonable methods for ascertaining the identity of the [class members, that is] individuals who answered [the defendant's] collection calls"); Hill v. T-Mobile, USA, Inc., No. 2:09-cv-1827-VEM, 2011 WL 10958888, at *10–11 (N.D. Ala. May 16, 2011) (holding ascertainability not established where plaintiffs had proposed "creating a class list using T[-]Mobile's databases," because plaintiffs "ha[d] not addressed how to effectively back out from such a list" the identities of persons *not* eligible for class-action relief); see also Bussey, 562 F. App'x at 788 (revising class definition to cover only loyalty-card-using gamblers who lost money during a gaming session—rather than during a specific game—because plaintiffs "ha[d] not provided *any* indication that they have, or even that they can obtain, data about losses at the game level"); cf. Carrera v. Bayer Corp., 727 F.3d 300, 306–07 (3d Cir. 2013) ("A plaintiff may not merely propose a method of ascertaining a class without any evidentiary support that the method will be successful.").

A plaintiff cannot establish ascertainability simply by asserting that class members can be identified using the defendant's records; the plaintiff must also establish that the records are in fact useful for identification purposes, and that identification will be administratively feasible.  *See Stalley*, 296 F.R.D. at 679–80

6

(holding ascertainability not established where plaintiffs proposed that "members of the class [of *actual* recipients of defendant's calls] . . . be identified and notified based on [the defendant's] own records," because the defendant's records indicated "merely the *intended* recipients" (internal quotation marks omitted)); Hill, 2011 WL 10958888, at *10–11; see also Bussey, 562 F. App'x at 788 (revising class definition to encompass only persons who could, in fact, be identified using the defendant's records).

Similarly, a plaintiff cannot satisfy the ascertainability requirement by proposing that class members self-identify (such as through affidavits) without first establishing that self-identification is administratively feasible and not otherwise problematic.  See Fisher v. Ciba Specialty Chems. Corp., 238 F.R.D. 273, 301–02 (S.D. Ala. 2006) (rejecting "plaintiffs' optimistic argument that prospective class members could be counted on to self-select"); LaBauve v. Olin Corp., 231 F.R.D. 632, 684 (S.D. Ala. 2005) (holding possibility of publication notice does not establish ascertainability in part because "certain people may respond to publication notice even though they were not [part of the class]"); Perez v. Metabolife Int'l, Inc., 218 F.R.D. 262, 269 (S.D. Fla. 2003) (holding ascertainability not established when "the only evidence likely to be offered in many instances will be the putative class member's uncorroborated claim that he or she used the product").  The potential problems with self-identification-based

7

ascertainment are intertwined.  On the one hand, allowing class members to self-identify without affording defendants the opportunity to challenge class membership "provide[s] inadequate procedural protection to . . . [d]efendant[s]" and "implicate[s their] due process rights."  Perez, 218 F.R.D. at 269; see also LaBauve, 231 F.R.D. at 684 (citing Perez); cf. Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 594 (3d Cir. 2012) ("Forcing BMW and Bridgestone to accept as true absent persons' declarations that they are members of the class, without further indicia of reliability, would have serious due process implications.").[3]  On the other hand, protecting defendants' due-process rights by allowing them to challenge each claimant's class membership is administratively infeasible, because it requires a "series of mini-trials just to evaluate the threshold issue of which [persons] are class members."  Fisher, 238 F.R.D. at 302; see also Perez, 218

---

[3] Karhu argues that defendants have no due-process right against unverified self-identification when total liability will be established at trial, and will not change depending on the number of claims actually made.  Because defendants' total liability will not be affected, it should not matter to them whether or not they are defrauded.

This argument has no force.   As the Carrera court explained, a defendant's due-process right against unverified self-identification is not only about total liability:  It is also about ensuring finality of judgment.  Carrera, 727 F.3d at 310 ("If fraudulent or inaccurate claims materially reduce true class members' relief, these class members could argue the named plaintiff did not adequately represent them . . . .  When class members are not adequately represented . . . they are not bound by the judgment.").  Nor is Allapatah Servs., Inc. v. Exxon Corp., 333 F.3d 1248, 1258–59 (11th Cir. 2003), the only case Karhu cites in support of his argument, to the contrary.  In Allapatah, we held that defendants *do* have a due-process right to contest individual class members' claims *during postverdict claim distribution*, at least when total liability has not already been established and the defendants' defenses might affect such liability.  Id.  The case was not a class-certification (much less ascertainability) case, and did not foreclose the possibility that defendants' due-process right against unverified self-identification might arise from some other concern besides total liability.

F.R.D. at 269 ("[I]ndividualized mini-trials would be required even on the limited issue of class membership.").[4] A plaintiff proposing ascertainment via self-identification, then, must establish how the self-identification method proposed will avoid the potential problems just described.[5]

In light of these standards, the district court's ascertainability holding was not an abuse of discretion. Karhu's proposal to identify class members using VPX's "sales data" was incomplete, insofar as Karhu did not explain how the data would aid class-member identification. Nor was any potential identification procedure obvious: VPX's sales data identified mostly third-party retailers, not class members. Karhu did not explain to the court that it envisioned a three-step identification process: (1) Use the sales data to identify third-party retailers, (2) subpoena the retailers for *their* records, and (3) use those records to identify class members. Therefore, the district court acted within its discretion when it rejected Karhu's proposal to identify class members via VPX's "sales data."

---

[4] We do not address whether self-identification-based ascertainment might also implicate the interests of absent class members in cases where total liability will be established at trial. See Carrera, 727 F.3d at 310 ("It is unfair to absent class members if there is a significant likelihood their recovery will be diluted by fraudulent or inaccurate claims.").

[5] A plaintiff might establish that self-identification-based ascertainment is administratively feasible and otherwise unproblematic by proposing a case-specific and demonstrably reliable method for screening each self-identification. See Carrera, 727 F.3d at 311 (rejecting affidavit screening model for lack of case-specificity and reliability, and remanding to "afford [the plaintiff] the opportunity to submit a[n affidavit] screening model specific to this case and prove how the model will be reliable and how it would allow [the defendant] to challenge the affidavits.").

The district court likewise acted within its discretion when it rejected identification via affidavit.  Because Karhu had not himself proposed an affidavit-based method, he necessarily had not established how the potential problems with such a method would be avoided.  Without a specific proposal as to how identification via affidavit would successfully operate, the district court had no basis to accept the method.  We therefore uphold the district court's ascertainability holding in full.

Karhu's arguments that we construe the ascertainability requirement too strictly do not convince.  For example, Karhu is incorrect that a strict ascertainability requirement conflicts with Klay v. Humana, Inc., 382 F.3d 1241, 1271–72 (11th Cir. 2004).  In Klay, we held that the district court did not abuse its discretion by finding that class-action resolution was superior under Rule 23(b)(3), even though individualized issues of reliance, causation, and damages would have to be resolved as to particular class members.  Id.  Although these individualized issues implicated the manageability of the case—a consideration under Rule 23(b)(3)—we reasoned that manageability concerns "will rarely, if ever, be in [themselves] sufficient to prevent certification of a class."  Id. at 1272.  Karhu argues that a strict ascertainability requirement violates the Klay principle that a concern about case manageability should not stand in the way of certification.

10

Not so.  Klay addressed manageability concerns that a court might face *after* class members have already been identified—for example, concerns about whether particular class members are entitled to relief in light of individualized reliance, causation, and damages issues.  Id. at 1273.  Ascertainability, by contrast, addresses whether class members can be identified at all, at least in any administratively feasible (or manageable) way.  Put differently, the manageability concern at the heart of the ascertainability requirement is prior to, hence more fundamental than, the manageability concern addressed in Klay.  Klay therefore presents no bar to our holding.

Karhu is also incorrect that a strict ascertainability requirement will eradicate small-dollar class-action claims.  Karhu argues that small-dollar plaintiffs will not be able to propose an administratively feasible method by which class members can be identified.  Karhu's own briefing illustrates why his fear is unfounded.  According to Karhu, his counsel has before succeeded in proposing administratively feasible identification methods.  For example, in In re Scotts EZ Seed Litig., No. 12-cv-4727, (S.D.N.Y. Jun. 15, 2012), plaintiffs established that many purchasers of EZ Seed could be identified by subpoenaing third-party retailer Wal-Mart for its customer records (and in fact did so subpoena Wal-Mart).  The district court later held that Karhu had satisfied the ascertainability

requirement.  In re Scotts EZ Seed Litig., No. 12-cv-4727, 2015 WL 670162, at

*5–6 (S.D.N.Y. Jan. 26, 2015).

Relatedly, Karhu might have satisfied the ascertainability requirement in this

very case.  In his motion to alter or amend the order denying class certification,

Karhu explained that VPX sold Meltdown primarily to third-party retailers, and

proposed identifying class members by subpoenaing the retailers for their records.

The district court took no issue with the abstract principle that a plaintiff could

satisfy the ascertainability requirement by proposing a subpoena-based method for

identifying class members.  Rather, the district court held only that Karhu should

have proposed the method in his class-certification papers, instead of only upon

moving to alter or amend.  Had Karhu done so, he might well have satisfied the

ascertainability requirement before the district court.[6]

In sum, a plaintiff establishes Rule 23's implicit ascertainability requirement

by proposing an administratively feasible method by which class members can be

identified.  In this case, Karhu's bare proposal that the district court ascertain class

---

[6] We do not address the question of what, precisely, Karhu would need to produce in order to establish that the records of third-party retailers could be used to identify class members in an administratively feasible manner.  In this regard, we express no opinion as to whether the Carrera court set an appropriate bar for subpoena- or third-party-retailer based ascertainment. See Carrera, 727 F.3d at 308–09 ("Carrera argues he will be able to show class membership using retailer[s'] records of sales made with loyalty cards, e.g., CVS ExtraCare cards, and records of online sales. . . . But there is no evidence that a single purchaser of WeightSmart could be identified using records of . . . online sales.  There is no evidence that retailers even have records for the relevant period.")

members through VPX's "sales data" was insufficient to satisfy the ascertainability requirement.

## III. Conclusion

Because we uphold the district court's ascertainability decision, we affirm without reaching the district court's Rule 23(b)(3) decision.

**AFFIRMED**.

MARTIN, Circuit Judge, concurring:

The vehicle of the class action was intended to "vindicat[e] . . . the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 617, 117 S. Ct. 2231, 2246 (1997) (citations omitted).  Today's majority denies relief based on the court-created doctrine of ascertainability, which, as a principle, could erode this purpose.  Some courts have held that a prospective class of consumers of a small-dollar product is not ascertainable if the only way they can be identified is through self-identification.  Though the facts of this case present this court with no opportunity to join those, I write separately to address the problems with such a holding.  Specifically, self-identification can and should be a sufficient means of ascertaining a class, particularly for a class of consumers of a cheap and unique product like the one at issue here.  I therefore reject the District Court's reasoning and its potential implications.  However, because I agree with the majority that Mr. Karhu failed to sufficiently make a self-identification argument at the class-certification stage, I concur in the judgment.

I.

Vital Pharmaceuticals, Inc. (VPX) is a Florida corporation that manufactures, advertises, and sells a dietary supplement, modestly named "VPX Meltdown Fat Incinerator" (Meltdown).  VPX advertises, also modestly, that

14

Meltdown "burns fat for 6+ hours" by causing a "29% thermogenic increase" and a "56% increase in fat utilization."  Adam Karhu, a New York resident who purchased Meltdown, sued VPX, claiming that Meltdown is not effective for this advertised purpose.

Mr. Karhu filed his suit as a class action.  He moved pursuant to Federal Rule of Civil Procedure 23(b)(3) for certification of a class defined as "all persons in the United States who purchased Meltdown from April 4, 2008 to date" as well as a subclass of "all Class members who purchased the product in New York."  He asserted claims on behalf of the nationwide class for (1) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301–12; (2) breach of express warranty; (3) unjust enrichment; and (4) violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201–13.  He also asserted a claim on behalf of only the New York subclass for violations of New York General Business Law § 349.

The District Court denied Mr. Karhu's request for class certification primarily because it concluded that the members of Mr. Karhu's proposed classes were not ascertainable.  First, although Mr. Karhu suggested that VPX's "sales data would allow the Court to identify members," the District Court found that "VPX . . . makes the bulk of its sales to distributors and retailers and sells directly to consumers relatively infrequently."  Thus, VPX would not have a record of most

15

class members.  Further, because a bottle of Meltdown is "a relatively small purchase, . . . purchasers are less likely to retain receipts or other records" to show they have purchased Meltdown.  Finally, the Court refused to "trust individuals to identify themselves as class members through the submission of affidavits."  Doing so would "deprive VPX of its due process rights to challenge the claims of each putative class member."  "On the other hand, allowing VPX to contest each affidavit would require a series of mini-trials and defeat the purpose of class-action treatment."

## II.

A plaintiff seeking class certification must demonstrate that his claim meets the express requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy.  See Fed. R. Civ. P. 23(a)(1)–(4).  However, courts have also read Rule 23 to contain an implicit, unwritten requirement: that a proposed class be "adequately defined and clearly ascertainable."  Little v. T-Mobile USA, Inc., 691 F.3d 1302, 1304 (11th Cir. 2012) (quotation omitted).

Historically, courts analyzing ascertainability have required something quite narrow.  "Ascertainability has traditionally been defined as the existence of a class whose members can be identified by reference to objective criteria in the class definition."  Daniel Luks, Ascertainability in the Third Circuit: Name That Class Member, 82 Fordham L. Rev. 2359, 2369 (2014).  The leading class action treatise

16

similarly notes that "courts essentially focus on the question of whether the class can be ascertained by objective criteria."  Newberg on Class Actions § 3.3 (5th ed.); see also McBean v. City of New York, 260 F.R.D. 120, 133 (S.D.N.Y. 2009) ("A class is ascertainable when defined by objective criteria that are administratively feasible, without a subjective determination.").  What is more, that treatise cautions that a "court need not know the identity of each class member before certification; ascertainability requires only that the court be able to identify class members at some stage of the proceeding."  Newberg on Class Actions § 3.3 (5th ed.).

Our Court's approval of the class in Fitzpatrick v. General Mills, Inc., 635 F.3d 1279 (11th Cir. 2011), exemplifies this approach.  There, we approved of a district court's certification of a class of all purchasers of YoPlus, a probiotic yogurt, in the State of Florida.  Id. at 1282–83 (noting that the district court order "conducted a detailed analysis," was a "scholarly work reflecting careful attention to the requirements of" Rule 23, and "is sound and in accord with federal and state law").  The district court in Fitzpatrick approved of the class despite the "likely difficulties" of "identifying those consumers that bought Yo-Plus, and of that group, who paid a premium for it," and "calculating the appropriate compensation for each plaintiff."  Fitzpatrick v. General Mills, Inc., 263 F.R.D. 687, 702 (S.D. Fla. Jan. 11, 2010).  Yogurt consumers, after all, are unlikely to retain receipts

17

proving their purchases.  But the District Court insisted that "this difficulty [was] not in itself a sufficient basis to prevent certification of the class."  Id. (quotation marks omitted).  We easily allowed certification of that class without questioning its ascertainability.

### III.

The record here indicates that Mr. Karhu could have made a good case for the ascertainably of his proposed class based on consumer affidavits.[1]  Many courts have grappled with whether affidavits can be a reliable way to identify class membership.  I see these courts looking to at least two factors.  First, courts look to the value of the product being challenged in the class action to determine the likelihood that fraudulent claims will be filed.  "A simple statement or affidavit may be sufficient where claims are small."  Newberg on Class Actions § 18:54 (4th ed.).  Thus, while courts have certified classes of purchasers of low-value items, such as supplements or bottled beverages, based solely on consumer self-identification, see, e.g., McCrary v. Elations Co., LLC, No. EDCV 13-00242 JGB, 2014 WL 1779243, at *7–9 (C.D. Cal. Jan. 13, 2014) (allowing "class members to self-identify" that they purchased "an over-the-counter supplement sold in retailers throughout [a] state"), they have been more reluctant to certify classes when the

---

[1] I agree with the majority that Mr. Karhu forfeited his argument that he could identify purchasers of Meltdown through third-party sales records, since he raised this argument for the first time in his motion for reconsideration.

18

per-class-member claim is larger, see, e.g., In re Hulu Privacy Litig., No. C 11-03764 LB, 2014 WL 2758598, at *16 (N.D. Cal. June 17, 2014) (finding no ascertainability because "at $2,500 per class member, [the claims] are not small").

Second, courts have evaluated the "the likelihood of a potential class member being able to accurately identify themselves as a purchaser of the allegedly deceptive product." Randolph v. J.M. Smucker Co., 303 F.R.D. 679, 689 (S.D. Fla. 2014). Where a challenged product is similar to other unchallenged products on the market, consumers may find it hard to know whether they purchased the challenged product. For instance, in Randolph, the Southern District of Florida declined to certify a class of purchasers of certain Crisco oils. The court noted that there were at least nine different Crisco oils on the market, only four of which were the subject of that case. Id. at 687. Beyond that, even among those four oils, the allegedly deceptive label being challenged "was not placed on all four oils uniformly throughout the class period." Id. The court concluded that "the likelihood that an individual would recall not only which specific kind of oil, but also, when that oil was purchased, complicates identification of the putative class." Id.; see also Jones v. ConAgra Foods, Inc., No. C 12-01633 CRB, 2014 WL 2702726, at *10 (N.D. Cal. June 13, 2014) (noting a "subjective memory problem" because "there were literally dozens of varieties with different can sizes, ingredients, and labeling over time and some Hunt's cans included the challenged

19

language, while others included no such language at all" (quotation marks omitted)).

I would combine the reasoning of these courts. Looking to the two factors—(1) the value of each class member's claim, and (2) the likelihood that potential class members could accurately identify themselves—I conclude that Mr. Karhu likely could have shown ascertainability. First, a bottle of Meltdown costs around $23, a small amount not likely to invite fraudulent claims. Second, Mr. Karhu notes that "Meltdown is a unique product in name, function, and appearance." This is in contrast to Randolph, where there were a number of versions of Crisco on the market, and only some were being challenged. This record includes no evidence that consumers would be unable to recall whether they are class members. A class composed of purchasers of Meltdown for a certain period of time could therefore be ascertainable.[2]

---

[2] The cases the majority cites rule on facts different from those here. In Fisher v. Ciba Specialty Chemicals Corp., 238 F.R.D. 273 (S.D. Ala. 2006), the court held that a class of landowners was not adequately defined because the class definition included a requirement that each parcel of land not be "income-producing." Id. at 301. The court rejected the argument that "prospective class members could be counted on to self-select" because the question of whether a parcel of land is "income-producing" cannot be reduced to a simple yes-or-no question. Id. at 302. "Depositions would need to be taken, documents would have to be produced, and argument would need to be heard, . . . to assess whether [any lot] was or was not 'income-producing.'" Id. Likewise, in LaBauve v. Olin Corp., 231 F.R.D. 632 (S.D. Ala. 2005), the court declined to certify a certain class of fishermen because it thought that "people may respond to publication notice even though they were not fishing in the particular area of concern during the particular temporal interval of concern" since the geographic and temporal scope of the class of fishermen was "so amorphous." Id. at 683–84. Finally, in Perez v. Metabolife International, Inc., 218 F.R.D. 262 (S.D. Fla. 2003), the court was wary of certifying a class of purchasers of an over-the-counter weight loss supplement because the supplement was "only one of several producing

20

IV.

Unfortunately for the putative class, Mr. Karhu failed to argue this point in his class-certification motion. As the majority notes, Mr. Karhu, did "not established how the usual problems with [affidavits] would be avoided." Panel Op. 10. Mr. Karhu, it says, failed to offer a "specific proposal as to how identification via affidavit would successfully operate." Id. In fact, the District Court apparently considered the self-identification argument "of its own accord" below. Id. at 4. As I've said, I believe that self-identification would probably be a sufficient means of ascertaining a class of purchasers of a product like Meltdown. In any event, I read today's majority opinion narrowly. Mr. Karhu simply did not adequately argue his class was ascertainable before the District Court. Class representatives in future cases may more clearly explain to district courts how affidavits will reliably show class membership based on the two factors I noted above, and I expect that district courts will closely consider those arguments.

To hold otherwise—rejecting affidavits as a legitimate means of class identification in every case—would make it considerably more difficult for consumers to bring class-action claims on small-dollar products where consumers and companies are unlikely to keep or retain records of purchases. These include

---

containing ephedra, at least two others of which have very similar names." Id. at 269. Here, the class is clearly defined, and there was little risk of confusion since there was no similar product on the market.

21

most low-cost products typically sold in corner stores or vending machines— products like chewing gum, bottled soft drinks, or cigarettes—all of which are routinely bought with cash.  But claims like these are precisely the ones that the mechanism of the class-action device was designed to foster.  See Ebin, 297 F.R.D. at 567 ("[T]he class action device, at its very core, is designed for cases like this where a large number of consumers have been defrauded but no one consumer has suffered an injury sufficiently large as to justify bringing an individual lawsuit.").  I would like to see our courts continue to clarify the ascertainability doctrine so as not to eradicate the small-dollar consumer class action.

## VI.

The record here has led me to conclude that although Mr. Karhu failed to properly argue that affidavits were sufficient to show ascertainability in his class-certification motions to the District Court, he had a strong case to make.  When timely presented, I would hold that affidavits are a sufficient means of identification for purchasers of a cheap, unique product like Meltdown.  I concur in the judgment.

22