PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2621
_____

GABRIEL JOSEPH CARRERA,
on behalf of himself and all others similarly situated

v.

BAYER CORPORATION;
BAYER HEALTHCARE, LLC.,
                              Appellants

*(Amended Pursuant to the Clerk's Order of July 5, 2012)

_____

On Appeal from the District Court
for the District of New Jersey
D.C. Civil No. 2-08-cv-04716
(Honorable Jose L. Linares)
_____

Argued April 16, 2013

Before: SCIRICA, SMITH and CHAGARES, *Circuit Judges*

(Filed: August 21, 2013)

Matthew R. Ford, Esq.
Christopher D. Landgraff, Esq.
Rebecca Weinstein Bacon, Esq. [ARGUED]
Bartlit, Beck, Herman, Palenchar & Scott
54 West Hubbard Street
Room 300
Chicago, IL  60654

    *Counsel for Appellants*

Caroline F. Bartlett, Esq.
James E. Cecchi, Esq.
Lindsey H. Taylor, Esq.
Carella, Byrne, Cecchi, Olstein, Brody & Agnello
5 Becker Farm Road
Roseland, NJ  07068

Joe R. Whatley, Jr., Esq. [ARGUED]
Whatley, Drake & Kallas
1540 Broadway
37th Floor
New York, NY  10036

    *Counsel for Appellee*

John Beisner, Esq.
Skaden, Arps, Slate, Meagher & Flom
1440 New York Avenue, N.W.
Washington, DC  20005

    *Counsel for Amicus Curiae*

_____

OPINION OF THE COURT
_____

SCIRICA, *Circuit Judge*.

In this Fed. R. Civ. P. 23(f) appeal, Bayer Corporation and Bayer Healthcare contest the certification of a class of consumers who purchased Bayer's One-A-Day WeightSmart diet supplement in Florida. The sole issue on appeal is whether the class members are ascertainable. While this interlocutory appeal was pending, we decided *Marcus v. BMW of North America, LLC*, in which we held "[i]f class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." 687 F.3d 583, 593 (3d Cir. 2012). We explained that if class members cannot be ascertained from a defendant's records, there must be "a reliable, administratively feasible alternative," but we cautioned "against approving a method that would amount to no more than ascertaining by potential class members' say so." *Id.* at 594. In light of *Marcus*, we will vacate the class certification order and remand.

I.

Gabriel Carrera brings this class action against Bayer Corporation and Bayer Healthcare, LLC ("Bayer"), claiming that Bayer falsely and deceptively advertised its product One-A-Day WeightSmart. WeightSmart was promoted as a multivitamin and dietary supplement that had metabolism-

enhancing effects. The recommended daily dose was one tablet and prices ranged from about $8.99 for fifty tablets to about $16.99 for one hundred tablets. Bayer sold WeightSmart in retail stores, such as CVS, until January 2007. Bayer did not sell it directly to consumers. Carrera alleges Bayer falsely claimed that WeightSmart enhanced metabolism by its inclusion of epigallocatechin gallate, a green tea extract.

Carrera initially sought to certify a nationwide class under Fed. R. Civ. P. 23(b)(3) bringing a claim under the New Jersey Consumer Fraud Act, as Bayer's headquarters is in New Jersey. The court denied certification, concluding that New Jersey law did not apply to out-of-state customers. This order is not before us on appeal.

Carrera then moved to certify a Rule 23(b)(3) class of Florida consumers under the Florida Deceptive and Unfair Trade Practices Act. One of Bayer's challenges to certification, and the issue on this appeal, is whether the class members are ascertainable. In this case, there is no dispute that class members are unlikely to have documentary proof of purchase, such as packaging or receipts. And Bayer has no list of purchasers because, as noted, it did not sell WeightSmart directly to consumers.

Carrera advanced two ways to ascertain the class: first, by retailer records of online sales and sales made with store loyalty or rewards cards; second, by affidavits of class members, attesting they purchased WeightSmart and stating the amount they purchased. Bayer challenged this latter method on the ground that memories of putative class members will be unreliable. Bayer argued that, in Carrera's

4

own deposition testimony, he failed to remember when he purchased WeightSmart and that he confused it with WeightSmart Advanced and other generic or similar products (none of which are part of this litigation). In response, Carrera produced a declaration of James Prutsman, who works for a company that verifies and processes class settlement claims, in which Prutsman stated there are ways to verify the types of affidavits at issue here and screen out fraudulent claims.

The court certified the class, defined as all persons who purchased WeightSmart in Florida.[1] It characterized the issue of ascertainability as one of manageability, stating "'speculative problems with case management'" are insufficient to prevent class certification. *Carrera v. Bayer Corp.*, Civ. A. No. 08-4716, 2011 WL 5878376, at \*4 (D.N.J. Nov. 22, 2011) (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1272-73 (11th Cir. 2004)). The court concluded Carrera had satisfied his burden, noting "that the claims involved will be relatively small and Plaintiff points to methods to verify claims." *Id.* Bayer appealed. It contends Carrera has failed to demonstrate the class is ascertainable because there is no evidence that any retailer records show who purchased WeightSmart. Bayer also argues that the use of unverifiable affidavits to ascertain class members fails to comply with Rule 23 and violates its rights under the due process clause.

II.

The District Court had jurisdiction under 28 U.S.C. §

---

[1] The class definition does not include a class period. Bayer sold WeightSmart from December 2003 through January 2007.

1332(d). We have jurisdiction under 28 U.S.C. § 1292(e) and Fed. R. Civ. P. 23(f). "We review a class certification order for abuse of discretion, which occurs if the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 312 (3d Cir. 2008) (quotation omitted). "Whether an incorrect legal standard has been used is an issue of law to be reviewed *de novo*." *Id.* (quotation omitted).

### III.

In *Marcus*, we explained the concept of ascertainability at length for the first time. 687 F.3d at 592-95. The claim in *Marcus* was that Bridgestone run-flat tires ("RFTs") were defective because they were highly susceptible to flats; could only be replaced, not repaired; and were highly priced. *Id.* at 588. The district court certified a Rule 23(b)(3) class consisting of "any and all current and former owners and lessees of 2006, 2007, 2008, and 2009 BMW vehicles equipped with run-flat tires manufactured by Bridgestone . . . and sold or leased in New Jersey whose Tires have gone flat and been replaced." *Id.* at 590 (quotation and alterations omitted). The defendants appealed, and we vacated the order certifying the class.

Before turning to the explicit requirements of Rule 23 in *Marcus*, we addressed two "preliminary matters": first, whether the class was clearly defined, and second, "whether the class must be (and, if so, is in fact) objectively ascertainable." *Id.* at 591. We concluded the class was not clearly defined. At the least, the definition of the class was broader than intended and did not define the claims, issues, or

defenses to be treated on a class-wide basis. *Id.* at 592. Accordingly, we remanded the case for clarification of the class definition.

We then addressed ascertainability. We began by stating, "[m]any courts and commentators have recognized that an essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3), is that the class must be currently and readily ascertainable based on objective criteria." *Id.* at 592-93 (citing cases). "If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." *Id.* at 593. We noted, "[s]ome courts have held that where nothing in company databases shows or could show whether individuals should be included in the proposed class, the class definition fails." *Id.* (citing cases).

We then explained the

> ascertainability requirement serves several important objectives. First, it eliminates serious administrative burdens that are incongruous with the efficiencies expected in a class action by insisting on the easy identification of class members. Second, it protects absent class members by facilitating the best notice practicable under Rule 23(c)(2) in a Rule 23(b)(3) action. Third, it protects defendants by ensuring that those persons who will be bound by the final judgment are clearly identifiable.

*Id.* (citations and quotations omitted).

7

We set forth why the "proposed class action raise[d] serious ascertainability issues." *Id.* Defendant BMW explained that it could not determine by its records which vehicles fit the definition of the class because it did not keep records of which cars got fitted with Bridgestone RFTs, because some customers may have changed tires (of which BWM had no record), and because BMW would not have known which customers experienced flat tires. *Id.* at 593-94. We stated that if plaintiff were to attempt to re-certify a class on remand, the court "must resolve the critical issue of whether the defendants' records can ascertain class members and, if not, whether there is a reliable, administratively feasible alternative." *Id.* at 594. We cautioned "against approving a method that would amount to no more than ascertaining by potential class members' say so. For example, simply having potential class members submit affidavits that their Bridgestone RFTs have gone flat and been replaced may not be proper or just." *Id.* (quotation omitted). "Forcing BMW and Bridgestone to accept as true absent persons' declarations that they are members of the class, without further indicia of reliability, would have serious due process implications." *Id.*

IV.

A.

"A party seeking class certification must affirmatively demonstrate his compliance with" Rule 23. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). "Class certification is proper only 'if the trial court is satisfied, after a rigorous analysis, that the prerequisites' of Rule 23 are met." *Hydrogen Peroxide*, 552 F.3d at 309 (quoting *Gen. Tel.*

8

*Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped. '[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Dukes*, 131 S. Ct. at 2551-52 (alteration in original) (quoting *Falcon*, 457 U.S. at 160). "Factual determinations necessary to make Rule 23 findings must be made by a preponderance of the evidence." *Hydrogen Peroxide*, 552 F.3d at 320.

These same standards apply to the question of ascertainability. Class ascertainability is "an essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3)." *Marcus*, 687 F.3d at 592-93. "[T]here is 'no reason to doubt'" that the "rigorous analysis" requirement "'applies with equal force to all Rule 23 requirements.'" *Hydrogen Peroxide*, 552 F.3d at 309 n.5 (quoting *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 33 n.3 (2d Cir. 2006)). Accordingly, a plaintiff must show, by a preponderance of the evidence, that the class is "currently and readily ascertainable based on objective criteria," *Marcus*, 687 F.3d at 593, and a trial court must undertake a rigorous analysis of the evidence to determine if the standard is met.

"A party's assurance to the court that it intends or plans to meet the requirements [of Rule 23] is insufficient." *Hydrogen Peroxide*, 552 F.3d at 318. A plaintiff may not merely propose a method of ascertaining a class without any evidentiary support that the method will be successful. "'A critical need'" of the trial court at certification "'is to determine how the case will be tried,'" *id.* at 319 (quoting Fed. R. Civ. P. 23 advisory committee's note, 2003

9

Amendments), including how the class is to be ascertained.

B.

Ascertainability mandates a rigorous approach at the outset because of the key roles it plays as part of a Rule 23(b)(3) class action lawsuit. First, at the commencement of a class action, ascertainability and a clear class definition allow potential class members to identify themselves for purposes of opting out of a class. Second, it ensures that a defendant's rights are protected by the class action mechanism. Third, it ensures that the parties can identify class members in a manner consistent with the efficiencies of a class action.

"'[T]he class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23.'" *Falcon*, 457 U.S. at 155 (second alteration in original) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979)). If a class cannot be ascertained in an economical and "administratively feasible" manner, *Marcus*, 687 F.3d at 594, significant benefits of a class action are lost. *See id.* at 593 (explaining ascertainability "eliminates serious administrative burdens that are incongruous with the efficiencies expected in a class action" (quotation omitted)). Accordingly, a trial court should ensure that class members can be identified "without extensive and individualized fact-finding or 'mini-trials,'" *id.*, a determination which must be made at the class certification stage.

In this case, the ascertainability question is whether each class member purchased WeightSmart in Florida. If this were an individual claim, a plaintiff would have to prove at

10

trial he purchased WeightSmart. A defendant in a class action has a due process right to raise individual challenges and defenses to claims, and a class action cannot be certified in a way that eviscerates this right or masks individual issues. *See McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 231-32 (2d Cir. 2008) (rejecting a "fluid recovery" method of determining individual damages, in which aggregate damages would be based on estimates of the number of defrauded class members and their average loss), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008); *see also Dukes*, 131 S. Ct. at 2561 (rejecting a method of class certification in which a sample set of class members would be used to extrapolate average damages). A defendant has a similar, if not the same, due process right to challenge the proof used to demonstrate class membership as it does to challenge the elements of a plaintiff's claim. *See Marcus*, 687 F.3d at 594 ("Forcing BMW and Bridgestone to accept as true absent persons' declarations that they are members of the class, without further indicia of reliability, would have serious due process implications."). Ascertainability provides due process by requiring that a defendant be able to test the reliability of the evidence submitted to prove class membership.

The method of determining whether someone is in the class must be "administratively feasible." *Id.* A plaintiff does not satisfy the ascertainability requirement if individualized fact-finding or mini-trials will be required to prove class membership. *Id.* at 593. "Administrative feasibility means that identifying class members is a manageable process that does not require much, if any, individual factual inquiry." William B. Rubenstein & Alba Conte, *Newberg on Class Actions* § 3:3 (5th ed. 2011); *see also Bakalar v. Vavra*, 237

11

F.R.D. 59, 64 (S.D.N.Y. 2006) ("Class membership must be readily identifiable such that a court can determine who is in the class and bound by its ruling without engaging in numerous fact-intensive inquiries.").

The type of challenge to the reliability of evidence that is required will vary based on the nature of the evidence. For example, if Carrera produces retailer records that purport to list purchasers of WeightSmart, Bayer can challenge the reliability of those records, perhaps by deposing a corporate record-keeper.[2] In sum, to satisfy ascertainability as it relates to proof of class membership, the plaintiff must demonstrate his purported method for ascertaining class members is reliable and administratively feasible, and permits a defendant to challenge the evidence used to prove class membership.

V.

Carrera contends the class is ascertainable. He points to two types of evidence that can be used to determine who is a class member. First, he argues the class can use records from retailers, which purportedly track customers who make purchases online or who use loyalty cards. Second, he proposes using affidavits of class members attesting to their purchases of WeightSmart. We conclude that, based on the evidence produced below, neither method satisfies Carrera's burden to show the class is ascertainable.

---

[2] Although some evidence used to satisfy ascertainability, such as corporate records, will actually identify class members at the certification stage, ascertainability only requires the plaintiff to show that class members can be identified.

12

A.

Carrera argues he will be able to show class membership using retailer's records of sales made with loyalty cards, e.g., CVS ExtraCare cards,[3] and records of online sales. Carrera points to a Federal Trade Commission (FTC) settlement with CVS regarding the sale of a supplement that was falsely advertised as boosting immune systems. The supplement was sold only at CVS. The FTC stated in its press release regarding the settlement that "[p]urchasers will be identified through the CVS ExtraCare card program and sales on cvs.com." A1089.

Bayer contends there is no evidence that any other retailer of WeightSmart has membership cards, that the FTC case is inapposite as it was a stipulated settlement in a non-Rule 23 context,[4] in which some of the money paid might go to class members but did not have to, and that it is speculative whether CVS or any other retailer's records will reveal customers who purchased WeightSmart.

The evidence put forth by Carrera is insufficient to show that retailer records in this case can be used to identify

---

[3] ExtraCare cards are membership cards that offer customers discounts. A1091.

[4] Settlement classes raise different certification issues than litigation classes. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Accordingly, we question whether the FTC's proposals for identifying purchasers, made as part of a settlement (and a non-class action settlement at that), bear any relevance to the issue of ascertainability in this case.

class members. Depending on the facts of a case, retailer records may be a perfectly acceptable method of proving class membership. But there is no evidence that a single purchaser of WeightSmart could be identified using records of customer membership cards or records of online sales. There is no evidence that retailers even have records for the relevant period. The FTC's press release does not support a finding that these records can determine class membership on the facts of this case. Moreover, we have no evidence the FTC's method was successful.

B.

Carrera also contends the class is ascertainable using affidavits of class members. He advances three arguments. First, due to the low value of the claims, class members will be unlikely to submit fraudulent affidavits. Second, because Bayer's total liability will not depend on the reliability of the affidavits, the ascertainability requirement should be relaxed. Finally, a screening method such as the one described in the Prutsman Declaration will ensure any unreliable affidavits are identified and disregarded.

1.

Because the claims are of low value, Carrera argues it is less likely someone would fabricate a claim. He concedes it is unlikely customers would have retained a receipt, but asserts this is irrelevant to possible falsification. He contrasts the claims at issue here to those in *Marcus*, which involved more money and more complicated issues of fact as to whether an individual was a class member.

This argument fails because it does not address a core concern of ascertainability: that a defendant must be able to challenge class membership. This is especially true where the named plaintiff's deposition testimony suggested that individuals will have difficulty accurately recalling their purchases of WeightSmart.[5] *Cf. In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 214 F.R.D. 614, 618-19 (W.D. Wa. 2003) (concluding affidavits could not be used to ascertain a class because the named plaintiffs had difficulty remembering the products they bought that contained PPA).

2.

Carrera also argues ascertainability is less important in this case because Bayer's total liability will be determined at trial, and will not increase or decrease based on the affidavits submitted. As noted, this is an action under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. § 501.201 *et seq*. "[A] consumer claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. Dist. Ct. App. 2006). There is no requirement of actual reliance on the deceptive act. *See Fitzpatrick v. Gen. Mills, Inc.*, 635 F.3d 1279, 1282-83 (11th Cir. 2011) (citing *Davis v. Powertel, Inc.*, 776 So. 2d 971, 973 (Fla. Dist. Ct. App. 2000)). "[T]he question is not whether the plaintiff actually relied on the alleged deceptive trade practice, but whether the practice was

---

[5] As mentioned, in his deposition testimony, Carrera was unable to remember when he purchased WeightSmart and confused WeightSmart with other products that are not part of this litigation.

15

likely to deceive a consumer acting reasonably in the same circumstances." *Davis*, 776 So. 2d at 974.

Contending liability under the FDUTPA is not based on individual issues, Carrera argues that he can prove at trial that Bayer owes a refund for every purchase of WeightSmart.[6] Since Bayer's records show it sold approximately $14 million worth of WeightSmart in Florida, Carrera asserts Bayer's liability will be determined at trial to be $14 million—no more, no less. As a result, affidavits attesting to class membership will only be used to determine to whom to pay the refund, and in what amount.

Under no circumstances, Carrera assures us, will Bayer pay any amount other than $14 million, even if a significant number of inaccurate claims are submitted and paid out. For example, if claims are made for more than $14 million, and inaccurate or false claims cannot be screened out, claimants will simply receive less than they are entitled to. And if too few claims are made, Carrera asserts the excess funds will not be returned to Bayer but will go to an unclaimed property fund. Carrera contrasts this situation with *Marcus*. In *Marcus*, there was no evidence of the total number of RFTs allegedly purchased in violation of the consumer protection laws. Accordingly, each claim submitted would have increased the amount of money the defendants would have had to pay. As a

---

[6] Bayer argues that if it is liable, its liability will be limited to refunding the premium consumers paid for WeightSmart based on its metabolism-enhancing claims. For purposes of this appeal, it makes no difference whether customers would be entitled to a full refund or merely a refund of this premium.

result, the defendants had a more substantial interest in screening out false claims. Because Bayer's total liability cannot be so affected by unreliable affidavits, Carrera argues Bayer lacks an interest in challenging class membership.

Under Carrera's view, if fraudulent or inaccurate claims are paid out, the only harm is to other class members. But ascertainability protects absent class members as well as defendants, *Marcus*, 687 F.3d at 593, so Carrera's focus on Bayer alone is misplaced. It is unfair to absent class members if there is a significant likelihood their recovery will be diluted by fraudulent or inaccurate claims. In this case, as we discuss, there is the possibility that Carrera's proposed method for ascertaining the class via affidavits will dilute the recovery of true class members.

Bayer too has an interest in ensuring it pays only legitimate claims. If fraudulent or inaccurate claims materially reduce true class members' relief, these class members could argue the named plaintiff did not adequately represent them because he proceeded with the understanding that absent members may get less than full relief.[7] When class members are not adequately represented by the named plaintiff, they are not bound by the judgment. *See Hansberry v. Lee*, 311 U.S. 32, 42 (1940) (explaining that due process requires the interests of absent class members to be adequately represented for them to be bound by the judgment). They could then bring a new action against Bayer and, perhaps, apply the principles of issue preclusion to

---

[7] We express no opinion on whether absent class members would be successful in arguing they were not adequately represented on this ground.

17

prevent Bayer from re-litigating whether it is liable under the FDUTPA. Bayer has a substantial interest in ensuring this does not happen. Accordingly, we reject Carrera's argument that the level of proof for ascertainability should be relaxed because Bayer's ultimate liability will not be based on the affidavits.

3.

Finally, Carrera argues that a screening method such as the one described in the Prutsman Declaration will ensure that Bayer pays claims based only on reliable affidavits. In his declaration, James Prutsman states that he works at Rust Consulting, Inc., a firm that has administered class settlements for nearly 25 years. A992. He explains that Rust "employs numerous methods to detect claims that are submitted fraudulently." A995. "For example, the firm runs programmatic audits to identify duplicate claims, outliers, and other situations. In addition, Rust has successfully utilized fraud prevention techniques where by [sic] the claim form offers claim options that do not reflect valid product descriptions, prices paid, geographic locations or combinations of such factors." *Id.* "By providing claims options such as a very high pill count or significantly higher purchase price in this case, fraudulent claim filers would naturally be inclined to select options that they believe would increase their claim value. As such, techniques such as these can be used to effectively [eliminate] fraudulent claims." *Id.*

Bayer maintains the Prutsman Declaration is insufficient to satisfy the reliability standard because it only addresses methods for allocating payment to a settlement class. This fact is important, according to Bayer, because

18

there are different standards for approving a settlement class than for certifying a litigation class, and because Prutsman does not opine that his method would satisfy the standard for class certification. Bayer also argues that just because some defendants have agreed to use such techniques in administering a class settlement, it does not mean that it is sufficiently reliable.

The Prutsman Declaration does not show the affidavits will be reliable.[8] Nor does it propose a model for screening claims that is specific to this case. And even if Prutsman produced a model that is specific to this case, we doubt whether it could satisfy the ascertainability requirement. At this stage in the litigation, the district court will not actually see the model in action. Rather, it will just be told how the model will operate with the plaintiff's assurances it will be effective. Such assurances that a party "intends or plans to meet the requirements" are insufficient to satisfy Rule 23. *Hydrogen Peroxide*, 552 F.3d at 318; *see also Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1434 (2013) (rejecting contention that Rule 23 is satisfied by an assurance that the plaintiffs can produce a damages model capable of measuring damages caused by a specific theory of antitrust impact). Carrera has suggested no way to determine the reliability of such a model. For example, even if a model screens out a

---

[8] Based on this conclusion, we do not need to reach Bayer's argument that the District Court erred by considering the Prutsman Declaration, which was produced with Carrera's reply brief in support of its motion for class certification. Accordingly, we will deny Bayer's motion to supplement the appellate record, which relates solely to this issue.

significant number of claims, say 25%, there is probably no way to know if the true number of fraudulent or inaccurate claims was actually 5% or 50%.[9]

As *Marcus* was decided after the trial court certified the class, Carrera should have another opportunity to satisfy the ascertainability requirement. Accordingly, we will afford Carrera the opportunity to submit a screening model specific to this case and prove how the model will be reliable and how it would allow Bayer to challenge the affidavits. Mere assurances that a model can screen out unreliable affidavits will be insufficient.[10]

VI.

For the foregoing reasons, we will vacate the District Court's order certifying the class action and remand for further proceedings consistent with this opinion. Because *Marcus* was decided after the court's certification of the class, Carrera should be allowed to conduct further, limited

---

[9] Carrera's ability to meet the ascertainability requirement using a screening model is further in doubt due to his inability to clearly remember his purchases of WeightSmart, although the District Court did not determine whether his testimony was reliable. It would appear that the less reliable a class member's memory is, the more reliable any screening method would have to be.

[10] Bayer also argues that because the statute of limitations will bar some claims, the class cannot be ascertained. Because the class is defined as all purchasers of WeightSmart in Florida, whether an individual's claim is barred by the statute of limitations is not an aspect of ascertainability in this case.

discovery on the issue of ascertainability and afforded another opportunity to satisfy the ascertainability requirement.