OPINION OF THE COURT
SCIRICA, Circuit Judge.
In this Federal Rule of Civil Procedure 23(f) appeal, a New Jersey automobile dealership contests the denial of class certification of claims brought against the consumer financing division of BMW and its contractor for junk faxes allegedly sent in violation of the Telephone Consumer Protection Act. The District Court denied class certification on the sole ground that there was no reliable and administratively feasible means of determining whether putative class members fell within the class definition. We will vacate and remand.
L
Defendant Creditsmarts Corporation operates an internet-based- “indirect business-to-business lending tree” that helps independent car dealers connect customers with various lenders. Dealers input customer information into. Creditsmarts’s online. portal, Creditsmarts forwards the information to lenders based on the customer’s credit profile and the automobile to be purchased, and lenders may, if appropriate, approve a loan for the customer. Creditsmarts benefits dealers by providing customers with access to financing options to facilitate sales and 'benefits lenders by connecting them with potential borrowers at many small independent dealerships.
Defendants BMW Bank of North America, Inc., and BMW Financial Services NA, LLC (collectively “BMW”) offer direct automotive financing to customers through a division called “up2drive.” up2drive provides financing to borrowers at independent car dealers for all makes and models of cars.
In 2012, BMW and Creditsmarts entered into a contract, memorialized in a Master Professional Services Agreement and a Marketing Agreement, under which BMW would offer up2drive loans to borrowers at participating independent car dealers through the Creditsmarts system. Creditsmarts agreed to, “establish electronic systems to permit customers to communicate with up2drive through mutually agreed secure lines of communication” and “process all application forms using the minimum credit parameters established by up2drive and the information obtained ... from the application form including the customer’s credit history, *437 that will provide sufficient data to determine whether the customer may qualify for any loan programs offered. ... by up2drive.” In exchange, Creditsmarts would receive compensation from BMW for customers referred to up2drive through its system. As part of the marketing agreement, BMW agreed to provide “general institution information (including logos or Trademarks) to be published on the Vendor web site (Creditsmarts.com).”
On a number of occasions in late 2012, Creditsmarts used the services of- a fax broadcaster, WestFax, Inc., to fax advertisements to independent car dealers. The advertisements included the up2drive logo, identified BMW Bank of North America, and stated “UpToDrive is looking for your BUSINESS!!” A Creditsmarts employee used WestFax to successfully send 5,480 faxes on November 29, 2012; 5,107 faxes on December 4, 2012; and 10(402 faxes on December 27, 2012 (collectively “the BMW faxes”).
To send each fax, the employee generated a list of recipients from Creditsmarts’s customer database. The customer database contains dealership contact information, sometimes including fax numbers, as well as information regarding the dealership’s relationship, if any, with Creditsmarts and the date the dealership was added to the database. After generating the recipient list from the customer database, the employee uploaded the list and the advertisement to Westfax’s online portal. Westfax then broadcast the fax to each recipient and billed Creditsmarts for each fax successfully completed. Neither Creditsmarts nor Westfax retained the lists of recipients of the BMW faxes.
' Plaintiff City Select Auto Sales, Inc., received one of the faxes sent on December 27, 2012. City Select alleges that it had no preexisting business relationship with Creditsmarts or BMW and that the fax was unsolicited. ; . .
On July 80, 2013, City Select filed a complaint in the United States District Court for the District of New Jersey asserting, inter alia, a claim under the Telephone Consumer Protection Act, 47 U.S.C.
§ 227, and a state law claim for- conversion based on the BMW fax. In addition to its individual claim, City Select asserted claims under Federal Rule of Civil Procedure 23 on behalf of a class of other car dealers who received the BMW faxes. City Select sought certification of a class defined as:
All auto dealerships that were included in the Creditsmarts database on or before December 27, 2012, with fax numbers identified in the database who were sent one or more telephone facsimile messages between November 20, 2012 and January 1, 2013, that advertised the commercial availability of property, goods or services offered by “BMW Bank of North America.”
During class certification discovery, City Select sought to compel production of the Creditsmarts database. The database was not preserved as of December 2012, but was preserved as of February 2014. City Select avers that class members can' be identified from the 2014 database by determining those customers who were added to the database before December 2012 and who had fax numbers listed in the database. But City Select’s motion to compel production of the Creditsmarts database was denied.[1]
*438 The District Court denied City Select’s motion for class certification on the sole ground that the proposed class failed to meet our Circuit’s' ascertainability standard because there was no reliable and administratively feasible means of determining whether putative class members fell within the class definition. City Select Auto Sales, Inc. v. BMW Bank of N. Am., Inc., Civil Action No. 13-4595, 2015 WL 5769951, at *9 (D.N.J. Sept. 29, 2015); see Byrd v. Aaron’s Inc., 784 F.3d 154, 163 (3d Cir. 2015). The Court concluded that “even though Plaintiff may be able to identify the potential universe of fax recipients, there is no objective way of determining which customers were actually sent the BMW fax.” City Select appealed.
II.
The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. We granted plaintiffs petition for interlocutory appeal from the District Court’s order denying class certification under Federal Rule of Civil Procedure 23(f) and have jurisdiction under 28 U.S.C. § 1292(e).
“We review a class certification order for abuse of discretion, which occurs if the district court’s decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact.” In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 312 (3d Cir. 2008) (internal quotation marks omitted). We review the legal standard applied by the district court de novo. Id.
III.
The question presented in this appeal is whether the District Court correctly determined that there was no reliable and administratively feasible means of determining whether putative class members were within City Select’s proposed class definition. Because we conclude the District Court erred in its analysis of plaintiffs pi’oposed method of determining class membership, we will vacate and remand.
Every putative class action must satisfy the four requirements of Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality, and adequacy. See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 613, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). In addition to the Rule 23(a) requirements, a class action must be maintainable under Rule 23(b)(1), (2), or (3). Only Rule 23(b)(3) is at issue in this case, which requires plaintiff to meet the additional requirements of predominance and *439 superiority. Amchem, 521 U.S. at 615, 117 S.Ct. 2231.
A Rule 23(b)(3) class must also be “currently and readily ascertainable based on objective criteria.” Marcus v. BMW of N. Am. LLC, 687 F.3d 583, 593 (3d Cir. 2012).[2] To satisfy this standard, plaintiff must show that “(1) the class is ‘defined with reference to objective criteria’;[3] and (2) there is ‘a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.’ ” Byrd, 784 F.3d at 163 (quoting Carrera v. Bayer Corp., 727 F.3d 300, 306 (3d Cir. 2013)). Plaintiff has the burden of making this showing by a preponderance of the evidence, and the district court must “undertake a rigorous analysis of the evidence to determine if the standard is met.” Carrera, 727 F.3d at 306; see In re Hydrogen Peroxide, 552 F.3d at 318. However, plaintiff need not “be able to identify all class members at class certification—instead, a plaintiff need only show that ‘class members can be identified.’ ” Byrd, 784 F.3d at 163 (quoting Hayes v. Wal-Mart Stores, Inc., 725 F.3d 349, 355 (3d Cir. 2013)) (emphasis in Byrd).
We have articulated three principal rationales for this standard. First, “ascer-tainability and a clear class definition allow potential class members to identify themselves for purposes of opting out of a class.” Carrera v. Bayer Corp., 727 F.3d 300, 306 (3d Cir. 2013). “Second, it ensures that a defendant’s rights are protected by the class action mechanism,” id., and that “those persons who will be bound by the final judgment are clearly identifiable,” Marcus, 687 F.3d at 593. Finally, “it ensures that the parties can identify class members in a manner consistent with the efficiencies of a class action.” Carrera, 727 F.3d at 307.
A.
An examination of the various factual circumstances in which we have analyzed the ascertainability standard helps to demonstrate its contours. We first addressed this standard in Marcus, in which plaintiff proposed a class of New Jersey purchasers of BMW vehicles equipped with “run-flat tires” that had “gone flat and been replaced” during the class period. 687 F.3d at 592. This definition presented several serious ascertainability issues. First, the vehicles in question were manufactured by a foreign subsidiary who was not a party to the action and thus defendant did not have access to records of which vehicles were equipped with the defective tires. Id. at 593. Second, dealerships regularly replaced the run-flat tires with regular tires, and plaintiff did not present a method of obtaining records from individual dealerships. Id. at 593-94. Finally, plaintiff limited the class to purchasers of BMWs whose tires had “gone flat and been replaced” and did not propose a method of determining who met this part of the class definition. Id. at 594. Because plaintiff left the answer to each of these questions to “potential class members’ say so,” we remanded to the District Court to consider “the *440 critical issue of whether the defendants’ records can ascertain class members and, if not, whether there is a reliable, administratively, feasible alternative.” Id.
In Hayes v. Wal-Mart Stores, Inc., we considered claims brought by a putative class of New Jersey retail discount club customers who purchased goods with extended warranties. 725 F.3d at 352. Plaintiffs proposed class definition included all customers who purchased a “Service Plan to cover as-is products” but excluded any customers whose “as-is product was covered .by a full manufacturer’s warranty, was a last-one item, consumers who obtained service on their product, and consumers who have previously been reimbursed for the cost of the Service Plan.” Id at 353. We noted that this class definition required a number of separate factual inquiries to determine class membership; “(1) whether a Sam’s Club member purchased. a Service Plan for an as-is item, (2) whether the as-is item was a ‘last one’ item or .otherwise came with a full manufacturer’s warranty, and (3) whether the member nonetheless received service on the as-is item or a refund of the cost of the Service Plan.” Id. at 356. We remanded so that, plaintiff could propose reliable and administratively feasible methods of answering these questions without requiring “extensive and individualized fact-finding.” Id.
In Carrera, the District Court certified a class composed of all purchasers of a particular over-the-counter diet supplement over several years in the state of Florida. 727 F.3d at 304. Defendants in that case weré the drug manufacturers, and thus did not have access to any retailer records that could have established which customers purchased the drug during the requisite time period. Id. Plaintiff proposed using “retailer records of online sales and .sales made with store loyalty or rewards cards” combined with affidavits from potential class members. Id. But plaintiff had not sought, nor obtained, the proposed records during class discovery. Id. at 308-09. We determined that it was inappropriate to certify the class without further inquiry into the nature and extent of the available records, and remanded in part for this purpose. Id. at 309. In addition, we noted that, even if the proposed records did exist, there was no evidence that a “single purchaser,” let alone the whole class, could be identified using them. Id. For these reasons, among others, we remanded so that plaintiff could conduct additional discovery into whether there was a reliable and administratively feasible means of determining class membership. Id. at 312.
Most recently, in Byrd we considered claims brought by people who leased computers with spyware that was installed and activated without their consent. 784 F.3d at 160. The class definition included both the lessees and their household members. Id. Defendants kept detailed records enabling identification of the lessees. Id. at 169. We concluded that identification of the household members was unlikely to pose “serious administrative burdens that are incongruous with the efficiencies expected in a class action.” Id. at 170 (quoting Marcus, 687 F.3d at 593). We explained “[a]ny form used to indicate a household member’s status in the putative class must be reconciled with the 895 known class members or some additional public records.” Id. at 171.
B.
'In this case, we will vacate and remand for two reasons. First, our ascer-tainability precedents do not categorically preclude affidavits from potential class members, in combination with the Credits-marts database, from satisfying the ascer-tainability standard. Second, because the *441 Creditsmarts database was not produced during discovery, plaintiff was denied the opportunity to demonstrate whether a reliable, administratively feasible method of ascertaining the class exists based, in whole or in part, on that database.
Critically, the proposed class definition in this case is limited to “auto dealerships that, were included in the Creditsmarts database on or before December 27, 2012.” The first two principal policy rationales for the ascertainability standard—facilitating opt-outs and identifying persons bound by the final judgment—are not implicated in this case. Unlike the consumer classes in Marcus, Hayes, and Carrera, in which plaintiffs had not limited the proposed class definitions to the available records, the Creditsmarts database allows for notice directly to potential class members and limits the universe of potential claimants. Any recipients of the BMW faxes who are not included in the Creditsmarts database would not be bound by a hypothetical judgment. See Byrd, 784. F.3d at 167 (“Individuals who are injured by a defendant but are excluded from a class are simply not bound by the outcome of that particular action.”).
The District Court concluded that the class was nonetheless not certifiable because the Creditsmarts database was over-inclusive, and thus it would be impossible to identify class members in a reliable and administratively feasible way. The Court explained,
It is clear from the record that the list of recipients of the BMW fax was generated from the Creditsmarts database, and although the database was not preserved until February 2014, it appears that the parties can determine from the database those customers that were also on the list in December 2012. From this subset of customers, the parties can eliminate those customers who could not have been sent the fax because no fax number was contained in the database. However, there is no evidence that the BMW fax was sent to every- customer who had a fax number in the database during the .relevant time period.
This determination was based, in part, on Creditsmarts’s representation that its database included more entries than the number of BMW faxes, sent in the three batches. The District Court concluded “there is no objective way of determining which customers were actually sent the BMW fax” using the Creditsmarts database alone.
To the extent this conclusion was based on a categorical determination that the Creditsmarts database in combination- with affidavits from potential -class members could never satisfy the ascertain-ability standard, - we disagree. -Plaintiff need not, at the class certification stage, demonstrate that a single record, or set of records, conclusively establishes class membership. Byrd, 784 F.3d at 163. Rqle 23 does not require an objective way of determining class membership at the certification stage, but only that there be “objective criteria” for class membership, and a “reliable and administratively feasible” means of determining whether these criteria are met. Id.
Affidavits.from potential class members, standing alone,-without “records to identify class members or a method to weed out unreliable affidavits,” will not constitute a reliable and administratively feasible means of determining class membership. Byrd, 784 F.3d at 171. However, Marcus and our other cases do not imply “no level of inquiry as to the identity of class members can ever be undertaken,” Id. Affidavits, in combination with records or other reliable and administratively feasible means, can meet the ascertainability standard. Id. at 170-71. The conclusion *442 that affidavits in combination with the Creditsmarts database categorically failed to meet the ascertainability standard was inconsistent with these precedents.
Here, the Creditsmarts database defines a limited set of potential claimants. The only factual inquiry required to determine class membership is whether a particular dealership in the database received the BMW fax on one of the dates in question. Answering this factual question of identification through affidavits or other available records does not necessarily require individualized fact-finding that would be “administratively infeasible” or “a violation of Defendants’ due process rights.” See Byrd, 784 F.3d at 170.
We take no position on whether the level of individualized fact-finding in this case is administratively infeasible because we are limited by the record before us, which does not include the Creditsmarts database. The determination whether there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition must be tailored to the facts of the particular case. The amount of over-inclusiveness, if any, of the proposed records is a critical consideration.[4]
The District Court’s conclusion that “there- is no evidence that the BMW fax was sent to every customer who had a fax number in the database during the relevant time period” cannot be supported on this record. Without production of the database, there was no evidence in the record of the number of customers who both had fax numbers and were in the database as of December 2012. On appeal, Credits-marts avers that its database includes “as many as 31,000 auto dealerships,” but does not offer any information about how many of those dealerships had fax numbers and were added prior to the relevant period. In addition, City Select was denied an opportunity to review the information in the Creditsmarts database to determine if it could be used as part of a rehable and administratively feasible means to determine class membership, combined with other records, with affidavits, or otherwise.
Without further information about the Creditsmarts database, there was not an adequate record on which to base the conclusion that the class was not ascertainable based on a “reliable and administratively feasible mechanism.” Byrd, 784 F.3d at 163.[5] We will remand so that the Credits- *443 marts database can be produced, subject, if appropriate, to a protective order and any other necessary provisions for confidentiality of Creditsmarts’s business information.
IV.
Because the District Court erred in applying the ascertainability standard, we will vacate and remand for further consideration in accordance with this opinion.

. The motion to compel was referred to a Magistrate Judge, who denied the motion without prejudice because City Select agreed early in the case not to seek production of the database before a ruling on the motion for class certification, delayed seeking to compel production, and given the exemplars that had been provided, had not shown that disclosure *438 of the entire database was needed to address the certification issue. The Magistrate Judge specifically stated that he was not ruling on the relevance of the database or whether Creditsmarts’s proprietary interests affected disclosure. City Select did not appeal this ruling to the District Court, or directly raise it before us. City Select explained at oral argument, however, that it did not appeal that ruling because it believed the gist of the database could be ascertained from the exemplar pages and it did not need the complete class list prior to certification, but only a method for identifying the class, which the exemplar adequately provided. The District Court, in turn, even assuming the exemplar was representative of the rest of the database, concluded that the City Select's class was not ascertainable. Although City Select’s failure to challenge the Magistrate Judge's discovery ruling could be deemed a waiver absent exceptional circumstances, Continental Cas. Co. v. Dominick d‘Andrea, Inc., 150 F.3d 245, 252 (3d Cir. 1998), we conclude—in light of the procedural history here, the arguments City Select raised expressly contemplating production of the database if the class was deemed ascertainable based on the exemplar, and our own view of the centrality of the database that even if City Select's objection were not preserved through its argument, we would be presented here with the type of exceptional circumstance that would allow us to address the production of the Creditsmarts database and to hold, as we do today, that its production is required.

. The ascertainability standard is not applicable to Rule 23(b)(2) classes. Shelton v. Bledsoe, 775 F.3d 554, 563 (3d Cir. 2015).

. Under the objective criteria requirement, “[a] class definition that depends on subjective criteria, such as class members' state of mind, will fail for lack of definiteness.” § 3:3.Tests for the definiteness requirement, Newberg on Class Actions § 3:3 (5th ed.); see Chiang v. Veneman, 385 F.3d 256, 271 (3d Cir. 2004) (concluding that "defining a class by reference to those who ‘believe’ they were discriminated against undermines the validity of the class by introducing a subjective criterion into what should be an objective evaluation”).

. Even if it is true that the BMW fax was not sent to every customer who had a fax number in the database during the relevant time period, the class could still be certified, so long as there is a method for determining which customers did receive such faxes, which could be by affidavit. While a high degree of over-inclusiveness could prevent certification, any degree of over-inclusiveness will not do so.

. As noted above, the District Court, even after assuming the database could be filtered to reflect the customers in the database during the appropriate time period, stated “there is no evidence that the BMW fax was sent to every customer who had a fax number in the database during the relevant time period.” That finding does not appear to be consistent with the record, which contains significant circumstantial evidence that the faxes were sent to every customer in the database at that time. For example, after the faxes went out, Creditsmarts’s CEO emailed BMW explaining that the “the employee who sent the email out to our registered dealer list” did it without authorization, and, at his deposition, the CEO testified that he understood the fax to be a "program update”—that is, an update meant to provide Creditsmarts’s "list of 31,000 auto dealerships that have registered to receive information regarding finance programs and compliance” with information that they "need[ ] to know when discussing finance options with their customers.” On remand, the District Court should consider this evidence in assessing whether the relevant portion of the database coupled with attestations satisfies our ascertainability standard.