FUENTES, Circuit Judge,
concurring:
I agree that under our existing precedent, City Select must be given an opportunity to demonstrate, using the Creditsmarts database and affidavits from potential class members, that there is a reliable and administratively feasible means to determine whether putative class members fall within the class definition. I write separately because this case highlights the unnecessary burden on low-value consumer class actions created by our circuit’s adoption of a second ascertainability requirement. The Second, Sixth, Seventh, and Ninth Circuits have all rejected this additional requirement, and we should do so as well.[1]
Our ascertainability inquiry is a creature of common law. Historically, it referred only to the requirement that a class be defined with reference to objective criteria. But in 2012, in Marcus v. BMW of North America, LLC,[2] we for the first time added a second requirement: that a plaintiff must show a “reliable, administratively feasible” mechanism to identify class members. Since our adoption of this new requirement, circuits that have carefully considered whether to adopt our new requirement have declined to do so.[3]
*444 As the majority explains,[4] Marcus and the cases interpreting it have identified three values purportedly served by ■ this additional ascertainability requirement—to protect:
(1) absent plaintiffs’. opt-out rights and interest in not having future claims diluted,[5]
(2) a defendant’s due process rights,[6] and
(3) the efficiency of the class action mechanism.[7]
In my view, the added ascertainability requirement is not necessary to serve any of these values. They are already sufficiently protected by the existing requirements of -Rule 23, including Rule 23(b)(3) predominance and Rule 23(b)(3) superiority. Moreover, it undermines the “very core” of cases that the class action device was designed to bring to court: cases where many consumers have been injured, but none have suffered enough, to make individual actions possible.[8] In those cases, as in .this case, the realistic options are collective action or no redress for grievances at all.
1. Absent Plaintiffs’ Opt-Out Rights and Interests
The additional requirement is apparently intended to protect absént class members by facilitating the “best notice practicable” requirement in a Rule 23(b)(3) action. This is said both to prevent absent class members’ recovery from being “diluted” by fraudulent or inaccurate claims, and to allow potential class members' to opt out of the class.
First, the dilution concern misses the mark on the reality of the consumer class action landscape. Only a tiny fraction of *445 eligible class members ever submit to class administrators, in consumer cases.[9]. And “[t]he chances that someone would, under penalty of perjury, sign a false affidavit stating that he or she bought Bayer aspirin for the sake of receiving a windfall of $1.59 are far-fetched at best.”[10] In any case, courts have tools to identify and screen out' fraudulent claims at the claims administration stage, as. they can rely on “claim administrators, various auditing processes, sampling for fraud detection, follow-up notices to explain the claims process, and other techniques ... to take into account the size of the claims, the cost of the techniques, and an empirical assessment of the likelihood of fraud or inaccuracy.”[11] Even if fraudulent claims are submitted, given the low participation rate generally, this is unlikely to result in dilution.[12] This dilution concern is also inconsistent with our Court’s acceptance of cy pres remedies in class actions, allowing the distribution of unclaimed class action damages to non-class members.[13]
Second, the concern about an absent plaintiffs notice and opt-out rights are also misplaced. Rule 23 does not require actual notice to all potential class members. Instead, Rule 23(c)(2)(B) requires the “best notice that is practicable under the circumstances, including individual notice to all members who -can be identified through reasonable effort.” Thus, the rule as written “recognizes it might be impossible to identify some class members for purposes of actual notice.”[14] In recognition of this impossibility, courts permit notice through third parties, advertising, and/or posting in *446 places frequented by class members.[15] Moreover, these concerns about an absent plaintiffs rights are beside the point, where class actions are the' only realistic means of vindicating a consumer’s rights.[16] Thus, by denying class certification based on a fear that a prospective plaintiff will not be given notice to opt out and bring his own individual claim, we, “in effect, deprive potential class members of any recovery as a means to ensure they do not recover too little.”[17] As Judge Posner put it, “[t]he realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30,”[18]
2. Defendants’ Due Process Rights
As a second justification, our Court has also explained that the added ascertaina-bility requirement protects defendants by (1) ensuring that the plaintiffs bound by the final judgment are clearly identifiable, and (2) securing their due process rights to raise individual defenses and challenges.
These arguments, however, are flawed. The first requirement of the ascertainability test, that a class must be defined in reference to objective criteria, already allows courts to determine whether a plaintiff in a future action was a member of a prior class and thus is precluded from relitigation.[19] A court can plainly read the class definition and make this determination.
As to a defendant’s due process rights, defendants may challenge a class member’s inclusion in the class and individual damages later in the litigation.[20] A defen *447 dant may prefer to bring these challenges prior to class certification, long before the damages stage or the settlement claims administration stage. But a defendant does not have a due process right to the most “cost-effective” method for challenging individual claims to class membership and damages, and these challenges are more appropriately addressed after certification.[21] Thus, the advisory committee notes to Rule 23 specifically contemplate that certification may be proper “despite the need, if liability is found, for separate determinations of the damages suffered by individuals within the class.”[22]
3. Efficiency
Finally, the added ascertainability requirement is said to eliminate administrative burdens that are inconsistent with the efficiency that class actions are intended to generate.
Not so. The superiority consideration explicitly required by Rule 23(b)(3) already requires courts to consider the efficiencies of the class action mechanism before certifying a class. Specifically, Rule 23(b)(3) requires that the class device be “superior to other available methods for fairly and efficiently adjudicating the controversy” and considers “the likely difficulties in managing a class action.” Thus, imposing a separate manageability requirement within ascertainability “renders the manageability criterion of the superiority requirement superfluous.”[23]
Furthermore, the superiority requirement requires courts to weigh the costs and benefits of certification.[24] The heightened ascertainability requirement, however, forces courts to consider the costs “in a vacuum”[25] without considering the realistic alternatives available to plaintiffs for bringing their claims. In truth, in many low value consumer class actions, “other available methods” of vindicating a plaintiffs rights will not exist.[26] A district court *448 applying our existing ascertainability precedent is forced to ignore this reality.
Moreover, this requirement understates the ability of district courts to manage their cases and engineer solutions at’ the claims administration stage.[27] It prevents the district court" from “waiting] and see[ing] how serious [a] problem may turn out tó be after settlement or judgment, when much more may be known about available records, response rates, and other relevant factors.”[28] And decertification remains an option if manageability concerns overtake the efficiency of the class action. The mere fact that a case is complicated or time-consuming should not sound the death knell for certification.
* * *
In short, our heightened ascertainability requirement creates an unnecessary additional burden for class actions, particularly the low-value consumer class actions that the device was designed to allow.[29]
This appeal arises because Westfax failed to retain records of the recipients of the alleged junk faxes. Our heightened ascertainability requirement encourages that practice. Had the .Defendants not retained a version, of the Creditsmarts database, Plaintiffs would likely have been unable to meet the ascertainability requirement as we have interpreted. Congress passed the Telephone Consumer Protection Act to discourage the sending of junk faxes. Our additional ascertaina-bility requirement threatens to render this and other consumer protection statutes ineffective by creating loopholes for defendants who fail to retain customer records.
We should join the Second, Sixth, Seventh, and Ninth Circuits in rejecting our added ascertainability requirement. We should return to our'original interpretation of ascertainability under Rule 23, and require only that a class be defined in reference to objective criteria. I agree with Judge Rendell in her critique that “[ujntil *449 we revisit this issue as a' full Court or it is addressed by the Supreme Court or the Advisory Committee on Civil Rules, we will continue to administer the ascertaina-bility requirement in a way that contravenes the purpose of Rule 23 and, in my view, disserves the public.”[30]

. See Byrd v. Aaron's Inc., 784 F.3d 154, 172 (3d Cir. 2015) (Rendell, J., concurring) ("[T]he lengths to which the majority goes in its attempt to clarify what our requirement of ascertainability means, and to explain how this implicit requirement fits in the class certification calculus, indicate that the time has come to do away with this newly created aspect of Rule 23 in the Third Circuit. Our heightened ascertainability requirement defies clarification. Additionally, it narrows the availability of class actions in a way that the drafters of Rule 23 could not have intended.").

. 687 F.3d 583, 594 (3d Cir. 2012).

. The Fourth Circuit applied a version of the two-requirement definition of ascertainability without analyzing the adoption of this second requirement. See EQT Prod. Co. v. Adair, 764 F.3d 347, 358 (4th Cir. 2014). The Eleventh Circuit has applied it in unpublished opinions.
However, the Second, Sixth, Seventh, and Ninth Circuits have all expressly rejected it. See In re Petrobras Sec., 862 F.3d 250, 265 (2d Cir.2017) (“With all due respect to our colleagues on the Third Circuit, we decline to adopt a heightened ascertainability theory that requires a showing of administrative feasibility at the class certification stage ... [, which]- would upset the careful balance of competing interests codified in the explicit requirements of Rule 23,”); Rikos v. Procter & Gamble Co., 799 F.3d 497, 525 (6th Cir., 2015), cert. denied, — U.S. —, 136 S.Ct. 1493, 194 L.Ed.2d 597 (2016) (“We see no reason to follow Carrera, particularly given the strong criticism it has attracted from other courts.”); Mullins v. Direct Digital, LLC, 795 F.3d 654, 658 (7th Cir. 2015), cert. denied, — U.S. —, 136 S.Ct. 1161, 194 L.Ed.2d 175 (2016); Briseno v. ConAgra Foods, Inc., 844 F.3d 1121 (9th Cir. 2017). In a recent opinion, the Sixth Circuit considered adopting the added definition of ascerlainability, but ultimately found it unnecessary to reach this issue. See Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc., 863 F.3d 460, 466 (6th Cir.2017) ("[T]he district court’s recognition of the difficulty in identifying class members without fax logs and with sole reliance on individual affidavits was equally sufficient to preclude certification, regardless of whether this concern is properly articulated as part of ascertainability, Rule 23(b)(3) predominance, or Rule 23(b)(3) superiority.”).
The Eighth Circuit rejects the ascertainability requirement all together. See Sandusky *444 Wellness Ctr., LLC v. Medtox Sci., Inc., 821 F.3d 992, 996 (8th Cir. 2016) ("[T]his court has not addressed áscertainab'ility as a separate, preliminary requirement. Rather, this court adheres to a rigorous analysis of the Rule 23 requirements, which includes that a class 'must be adequately defined and clearly ascertainable.’ ”),
In response to the Ninth Circuit's decision, ConAgra has petitioned the Supreme Court for certiorari, seeking to have the Court decide whether there must be a reliable, administratively feasible' method for identifying class members for a class to be certified. That petition is currently pending before the Court.

. Maj. Op, at 439.

. See Marcus, 687 F.3d at 593 (explaining that this requirement "protects absent class members by facilitating the ‘best notice practicable’ under Rule 23(c)(2) in a Rule 23(b)(3) action”). See also Carrera v. Bayer Cprp., 727 F.3d 300, 310 (3d Cir. 2013) ("It is unfair to absent class members if there is a significant likelihood their recovery will be diluted by fraudulent or inaccurate claims.”).

. Marcus, 687 F.3d at 593-94 (explaining that this requirement "protects defendants by ensuring. that those persons who will be bound by the final judgment are clearly identifiable”). See also Carrera, 727 F.3d at 310 ("Bayer too has an interest in ensuring it pays only legitimate claims, If fraudulent or inaccurate claims materially reduce true class members’ relief, these class members could argue the named plaintiff did not adequately represent them because he proceeded with the understanding that absent members may get less than full relief. When class members are not adequately represented by the named plaintiff, they are not bound by the judgment. They could then bring a new action against Bayer and, perhaps, apply the principles of issue preclusion to prevent Bayer from re-litigating whether it is liable under the [statute], Bayer has a substantial interest in ensuring this does not happen.” (internal citations omitted)).

. See Marcus, 687 F.3d at 593 (explaining that this requirement "eliminates serious administrative burdens that are incongruous with the efficiencies expected in a class action by insisting on the easy identification of class members.” (internal quotations and citations omitted)).

. Ebin v. Kangadis Food Inc., 297 F.R.D. 561, 567 (S.D.N.Y. 2014) (Rakoff, J.).

. See Carrera v. Bayer Corp., No. 12-2621, 2014 WL 3887938 (3d Cir. May 2, 2014) (denial of petition for rehearing en banc), Br. of Amici Curiae Professors of Civil Procedure & Complex Litigation at 9 (noting the “low historic claims rates” that make it unlikely that there would ever be a significant risk of dilution); Geoffrey C. Shaw, Note, Class Ascer-tainability, 124 Yale L.J. 2354, 2371 (2015) ("[0]f course it is common for only a fraction of the class members to ever file claims.”),

. Byrd, 784 F.3d at 175 (Rendell, J., concurring). See also Briseno, 844 F.3d at 1130 ("Why would a consumer risk perjury charges and spend the time and effort to submit a false claim for a de minimis monetary recovery?”).

. Mullins, 795 F.3d at 667,

. Id. ("It is of course theoretically possible that the total sum claimed by non-deserving claimants exceeds the total amount of unclaimed funds, in which ease there would be dilution, but given the low participation rates actually observed in the real world, this danger is not so great that it justifies denying class certification altogether, at least without empirical evidence supporting the fear.”).

. Briseno, 844 F.3d at 1129. The cy pres doctrine has been applied to class actions to allow courts to distribute unclaimed class action damages to charitable organizations in certain situations. See § 12:32.Cy pres—Generally, Newberg on Class Actions § 12:32 (5th ed.); In re Baby Prod. Antitrust Litig., 708 F.3d 163, 172 (3d Cir. 2013). ("We join other courts of appeals in holding that a district court does not abuse its discretion by approving a class action settlement agreement that includes a cy pres component directing the distribution of excess settlement funds to a third party to be used for a purpose related to the class injury.”).

. Mullins, 795 F.3d at 665. See also Byrd, 784 F.3d at 175 (Rendell, J,, concurring) (“Rule 23 requires the ‘best notice that is practicable under the circumstances’ to potential class members after a class has been certified. Potential difficulties in providing individualized notice to all class members should not be a reason to deny certification of a class. As the Supreme Court noted in Phillips Petroleum Co. v. Shutts, due process is satisfied when notice is ‘reasonably calculated’ to reach the defined class. 472 U.S. 797, 812, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). The question is not whether every class member will receive actual individual notice, but whether class members can be notified of their opt-out rights consistent with due process.”).

. Mullins, 795 F.3d at 665. See also Briseno, 844 F.3d at 1129 ("Courts have routinely held that notice by publication in a periodical, on a website, or even at an appropriate physical location is sufficient to satisfy due process.”) (citing Hughes v. Kore of Ind. Enter., Inc., 731 F.3d 672, 676-77 (7th Cir. 2013) (holding that sticker notices on two allegedly offending ATMs, as well as publication in the state's principal newspaper and on a website, provided adequate notice to class members in an action challenging ATM fees); Juris v. Inamed Corp., 685 F.3d 1294, 1319 (11th Cir. 2012) (holding that notice to unidentified class members by periodical and website satisfied due process)).

. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 161, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) ("Economic reality dictates that petitioner’s suit proceed as a class action or not at all.”).

. Carrera, Br. of Amici Curiae Professors of Civil Procedure & Complex Litigation at 9. See also Briseno, 844 F.3d at 1129 ("Practically speaking, a separate administrative feasibility requirement would protect a purely " theoretical interest of absent class members at the expense of any possible recovery for all class members—in precisely those cases that depend most on the class mechanism. Justifying an administrative feasibility requirement as a means of ensuring perfect recovery at the expense of any recovery would undermine the very purpose of Rule 23(b)(3)—‘vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.' ” (quoting Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 617, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (internal quotation marks and citations omitted))).

. Carnegie v. Household Int’l, Inc., 376 F.3d 656, 661 (7th Cir. 2004).

. Briseno, 844 F.3d at 1130 n. 9 (“If a future plaintiff were to assert a claim challenging the “100% Natural" label on Wesson oil purchased during the class period in one of the eleven states at issue, that would show that she was a member of the class bound by the judgment. This would be so regardless of how 'administratively feasible’ it was to prove the entirety of the membership at the class certification stage in this action.”) (citing Shaw, Note, Class Ascertainability, 124 Yale L.J. at 2374-78).

. Mullins, 795 F.3d at 671 (“As long as the defendant is given the opportunity to challenge each class member's claim to recovery during the damages phase, the defendant’s due process rights are protected.”).

. Briseno, 844 F.3d at 1132. See also Mullins, 795 F.3d at 669 ("It is certainly trae that a defendant has a due process right not to pay in excess of its liability and to present individualized defenses if those defenses affect its liability. See Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 364-65, 131 S.Ct 2541, 180 L.Ed.2d 374 (2011). It does not follow that a defendant has a due process right to a cost-effective procedure for challenging every individual claim to class membership.”) (citing American Express Co. v. Italian Colors Restaurant, — U.S. -, 133 S.Ct. 2304, 2309, 186 L.Ed.2d 417 (2013) (“the antitrust laws do not guarantee an affordable procedural path to the vindication of every claim”)). This is particularly true in cases where the size of the class does not change the size of the potential damage award.

. Fed. R. Civ. P. 23 advisory committee’s note to 1966 amendment.

. Mullins, 795 F.3d at 663 (citing Daniel Luks, Note, Ascertainability in the Third Circuit: Name That Class Member, 82 Fordham L.Rev. 2359, 2395 (2014)).

. Id. at 663-64 (citing 7AA Wright et al., Federal Practice & Procedure § 1780 (“Viewing the potential administrative difficulties from a comparative perspective seems sound and a decision against class-action treatment should be rendered only when the ministerial efforts simply will not produce corresponding efficiencies. In no event should the court use the possibility of becoming involved with the administration of a complex lawsuit as a justification for evading the responsibilities imposed by Rule 23.”)).

. Id. at 663.

. Even if plaintiffs could realistically bring individual suits instead, I cannot see what efficiencies are promoted by requiring numerous actions adjudicating the same legal and factual issues for a small amount of damages each. See Carnegie, 376 F.3d at 661 ("The more claimants there are, the more likely a class action is to yield substantial economies in litigation. It would hardly be an improvement to have in lieu of this single class action 17 million suits each seeking damages of $15 to $30.”).

. Carrera, Br. of Amici Curiae Professors of Civil Procedure & Complex Litigation at 7-8 ("[T]he panel decision conflates class certification with the claims administration stage of the proceedings, The 'efficiencies' that are promoted by identifying individual class members plainly relate to the claims administration stage. It is in connection with the allocation of damages between and among class members that there is a need to ascertain the identities of those individual members,’').

. Mullins, 795 F.3d at 664. See also Byrd, 784 F.3d at 175 (Rendell, J., concurring) (“Imposing a proof-of-purchase requirement does nothing to ensure the manageability of a class or the 'efficiencies’ of the class action mechanism; rather, it obstructs certification by assuming that hypothetical roadblocks will exist at the claims administration stage of the proceedings.”).

. Carrera, No. 12-2621, 2014 WL 3887938, at *1 (Ambro, J., dissenting from denial of petition for rehearing en banc) ("Several ami-ci—including this country’s most recognized expert on procedure, Arthur Miller—warn that Carrera threatens the viability of the low-value consumer class action 'that necessitated Rule 23 in the first instance.' ” (quoting Br, of Amici Curiae Professors of Civil Procedure & Complex Litigation at 3)), See also Byrd, 784 F.3d at 176 (Rendell, J., concurring) ("The policy concerns animating our ascertainability doctrine boil down to ensuring that there is a surefire way to get damages into the hands of only those individuals who we can be 100% certain have suffered injury, and out of the hands of’those who may not have. However, by disabling plaintiffs from bringing small-value claims as a class, we have ensured that other policy goals of class actions—compensation of at least some of the injured and deterrence of wrongdoing, for example—have been lost, In small-claims class actions like Carrera, the real choice for courts is between compensating a few of the injured, on the one hand, versus compensating none while allowing corporate malfeasance to go unchecked, on the other,”),

. Byrd, 784 F.3d at 177 (Rendell, J., concurring).